**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| **MALIKIE INNOVATIONS LTD. AND KEY PATENT INNOVATIONS LTD.,**<br><br>Plaintiffs,<br><br>**v.**<br><br>**HYUNDAI MOTOR COMPANY, HYUNDAI CAPITAL AMERICA, AND PATTERSON MOTORS OF TYLER 3, INC.,**<br><br>Defendants. | Case No. 2:26-cv-00387<br><br>Jury Trial Demanded |

## ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

Plaintiffs Malikie Innovations Ltd. ("Malikie") and Key Patent Innovations Ltd. ("KPI") (collectively, "Plaintiffs"), by and through their undersigned counsel, bring this Original Complaint for patent infringement against Defendants Hyundai Motor Company ("Hyundai Motor"), Hyundai Capital America ("Hyundai Capital"), and Patterson Motors of Tyler 3, Inc. ("Patterson Motors") (collectively, "Defendants"), alleging as follows:

## BACKGROUND AND NATURE OF THE SUIT

1.      This is a claim for patent infringement arising under the patent laws of the United States, Title 35 of the United States Code.  This case asserts infringement of United States Patent Nos. 9,111,170 ("the '170 Patent"), 9,417,077 ("the '077 Patent"), 10,484,870 ("the '870 Patent"), RE48,212 ("the '212 Patent"), 7,917,829 ("the '829 Patent"), and 8,291,289 ("the '289 Patent") (collectively, "the Patents-in-Suit").

## THE PARTIES

2.    Plaintiff Malikie is the successor-in-interest to a substantial patent portfolio created and procured over many years by BlackBerry Ltd., formerly known as Research in Motion Ltd., and its predecessor, subsidiary, and affiliated companies (collectively, "BlackBerry"). Malikie is an Irish entity duly organized and existing under the laws of Ireland. Malikie has registered offices at: The Glasshouses GH2, 92 Georges Street Lower, Dun Laoghaire, Dublin A96 VR66, Ireland.

3.    Plaintiff KPI is the beneficiary of a trust pursuant to which Malikie owns, holds, and asserts the Patents-in-Suit. KPI is an Irish entity duly organized and existing under the laws of Ireland. KPI has registered offices at: The Glasshouses GH2, 92 Georges Street Lower, Dun Laoghaire, Dublin A96 VR66, Ireland.

4.    Hyundai Motor is a corporation organized and existing under the laws of the Republic of Korea with its principal place of business at 12 Heolleung-ro Seocho-gu, Seoul 06797, Republic of Korea.

5.    Hyundai Capital is an entity organized under the laws of the State of California. Hyundai Capital has a regular and established place of business in this District, including at least its offices at 6100 W. Plano Parkway, Plano, Texas 75093.  Hyundai Capital may be served with process through its registered agent, National Registered Agents, Inc. located at 1999 Bryan Street, Ste. 900, Dallas, TX 75201.

6.    Patterson Motors is a corporation organized under the laws of the State of Texas. Patterson Motors has a regular and established place of business in this district, including at least at its Hyundai dealership at 3120 S SW Loop 323, Tyler, Texas 75701.  Patterson Motors may be served with process via its registered agent, William R. Patterson III, located at 4545 North State Line, Texarkana, Texas 75503.

## JURISDICTION AND VENUE

7.      This action arises under the patent laws of the United States, 35 U.S.C. § 101, et seq. This Court's jurisdiction over this action is proper under the above statutes, including 35 U.S.C. § 271, et seq., 28 U.S.C. § 1331 (federal question jurisdiction), and § 1338 (jurisdiction over patent actions).

8.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

9.      For each Defendant, venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391 and 1400(b).

10.     Venue is proper as to Hyundai Motor in this District pursuant to 28 U.S.C. § 1391 because, among other things, Hyundai Motor is not resident in the United States, and thus may be sued in any judicial district, including this one, pursuant to 28 U.S.C. § 1391(c)(3). *See In re HTC Corp.*, 889 F.3d 1349, 1357 (Fed. Cir. 2018) ("The Court's recent decision in *TC Heartland* does not alter" the alien-venue rule.).

11.     Hyundai Capital has a regular and established place of business in this District, including at least at 6100 W. Plano Parkway, Plano, Texas 75093.  Patterson Motors has a regular and established place of business in this District, including at least at 3120 S SW Loop 323, Tyler, Texas 75701.  Additionally, Defendants have and continue to commit acts of infringement in this District through the marketing, distribution, use, sale, service, support, financing, and/or repair/maintenance of Hyundai vehicles in this District.

12.     As discussed in detail herein, Defendants have infringed (literally and/or under the doctrine of equivalents), directly, indirectly, and/or through subsidiaries, agents, representatives, or intermediaries, one or more claims of each of the Patents-in-Suit by making, using, selling, offering for sale, and/or importing into the United States Hyundai vehicles and mobile applications

with the features described in the charts attached hereto as Exhibits 7-13 (collectively the "Accused Instrumentalities").

13.     On information and belief, Hyundai Motor controls (and has controlled) HMA, as well as many other subsidiaries, within the supply chain of Accused Instrumentalities that were shipped to the United States. On information and belief, HMA provides (and has provided) sales, distribution, research, and development support in the United States for its parent Hyundai Motor, which wholly owns HMA. HMA is, and has been, an agent of Hyundai Motor. At the direction and control of Hyundai Motor, U.S. based sales and/or distribution subsidiaries, including HMA, have imported and continue to import Accused Instrumentalities into the United States and this District.

14.     On information and belief Hyundai Motor controls (and has controlled) HMA. On information and belief, each of these related companies and other Hyundai companies are, and have been, agents of Hyundai Motor. For example, Hyundai Motor and HMA use the same logo, further emphasizing that these companies are alter egos and/or agents of one another.

15.     On information and belief, Hyundai Motor and HMA, along with their respective foreign and U.S.-based subsidiaries, affiliates, distributors, retail partners, and customers (which act as part of a global network and supply chain of overseas sales and manufacturing subsidiaries), have operated as agents of one another and vicariously as parts of the same business group to work in concert together and enter into agreements that are nearer than arm's length to provide (and have provided) a distribution channel of the Accused Instrumentalities within this District and the U.S. nationally.

16.     Hyundai Motor and HMA operate (and have operated) in agency with their respective foreign and U.S.-based subsidiaries, affiliates, distributors, retail partners, suppliers,

ORIGINAL COMPLAINT                                                    Page 4 of 30

and customers, to provide a distribution channel of the Accused Instrumentalities within this District and the U.S. nationally. Hyundai Motor and HMA, individually and/or between one another and their respective agents and foreign and U.S.-based subsidiaries, affiliates, distributors, retail partners, suppliers, and customers, purposefully direct (and have directed) the Accused Instrumentalities into established distribution channels within this District and the U.S. nationally.

17.     On information and belief, Hyundai Motor and HMA, including their respective U.S.-based subsidiaries, affiliates, distributors, retail partners, and customers (which act as part of a global network and supply chain of overseas sales and manufacturing subsidiaries), have operated as agents of one another and vicariously as parts of the same business group to work in concert together and enter into agreements that are nearer than arm's length. Hyundai Motor and HMA, and their U.S.-based sales subsidiaries, individually and/or in concert, conduct business (and have conducted business) in the United States, including importing, distributing, offering to sell, and selling the Accused Instrumentalities that incorporate devices, systems, and processes that infringed the Patents-in-Suit in Texas and this District.

18.     Through offers to sell, sales, imports, distributions, and other related agreements to transfer ownership of Defendants' Accused Instrumentalities by and/or to affiliates, distributors, subsidiaries, suppliers, retail partners, customers, agents, and/or other Defendants, Defendants are operating in (and have operated in) and maintaining (and maintained) a significant business presence in the U.S. and/or through their U.S. subsidiaries or agents, Defendants do business in the U.S., the state of Texas, and in the Eastern District of Texas.

19.     On information and belief, Defendants place, have placed, and contributed to placing Accused Instrumentalities into the stream of commerce via an established distribution channel knowing or understanding that such products would be sold and used in the United States,

including in this judicial district. On information and belief, Defendants have also derived substantial revenues from infringing acts in this District, including from the sale and use of the Accused Instrumentalities.

20. On information and belief, Hyundai Motor is liable for any act for which HMA and its other subsidiaries would be or would have been liable, including for any infringement alleged in this matter, and references herein should be understood to encompass such acts by Hyundai Motor.

21. In the alternative, the Court has personal jurisdiction over Hyundai Motor under Federal Rule of Civil Procedure 4(k)(2), because the claims for patent infringement in this action arise under federal law, Hyundai Motor is not subject to the jurisdiction of the courts of general jurisdiction of any state, and exercising jurisdiction over Hyundai Motor is consistent with the U.S. Constitution.

22. Hyundai Motor is subject to service of process upon the Texas Secretary of State under Texas Civil Practice and Remedy Code § 17.044(b). The Texas Secretary of State is an agent for service of process on Hyundai Motor because Hyundai Motor is a nonresident who engages in business in this State, but does not maintain a regular place of business in this State or a designated agent for service of process, and because this action arises out of the business Hyundai Motor does and has done in this State and to which Hyundai Motor is a party. This action arises out of business Hyundai Motor does and has done in this State because Hyundai Motor has infringed and continues to infringe the Patents-in-Suit in this State, which constitutes "commit[ing] a tort a whole or in part in this state." Tex. Civ. Prac. & Rem. Code § 17.042(2).

23. Defendants are subject to this Court's specific and general personal jurisdiction pursuant to due process and/or the Texas Long Arm Statute because, *inter alia*, (i) Defendants

have done and continue to do business in Texas and (ii) Defendants have, directly and through intermediaries, committed and continue to commit acts of patent infringement in the State of Texas, including making, using, offering to sell, and/or selling Accused Instrumentalities in Texas, and/or importing Accused Instrumentalities into Texas, either directly or vicariously, inducing others to commit acts of patent infringement in Texas, and/or committing a least a portion of any other infringements alleged herein. Defendants have placed, and continue to place, infringing products into the stream of commerce, via established distribution channels, with the knowledge and/or understanding that such products are sold in Texas, including in this District. Defendants have derived substantial revenues from their infringing acts occurring within Texas and within this District. Defendants have substantial business in this State and judicial district, including: (a) at least part of its infringing activities alleged herein; and (b) regularly doing or soliciting business, engaging in other persistent conduct, and/or deriving substantial revenue from infringing goods offered for sale, sold, and imported, and services provided to Texas residents vicariously through and/or in concert with its alter egos, intermediaries, agents, distributors, importers, customers, subsidiaries, and/or consumers.

24.    Exercising personal jurisdiction over Defendants in this District would not be unreasonable given Defendants' contacts in this District, the interest in this District of resolving disputes related to products sold herein, and the harm that would occur to Plaintiffs.

25.    In addition, Defendants have knowingly induced infringement within this District by advertising, marketing, offering for sale, selling, testing, demonstrating, and/or otherwise encouraging use of infringing products within this District to consumers and providing instructions, user manuals, demonstrations, test drives, advertising, and/or marketing materials which facilitate, direct, or encourage the use of infringing functionality with knowledge thereof.

26.     Personal jurisdiction also exists specifically over Defendants because they transact business in this State or purposefully directed at this State (including, without limitation, retail stores) by making, importing, offering to sell, selling, and/or having sold infringing products within this State and District or purposefully directed at this State or District.

## THE PATENTS-IN-SUIT

### The '170 Patent

27.     The '170 Patent, entitled "Methods and Apparatus Relating to Text Items in Images," duly and legally issued on August 18, 2015, from U.S. Patent Application No. 14/091,195, filed on November 26, 2013, naming Wade Tsai, David Sutton, Jean-Francois Desgagne, and Ryan Josal as the inventors.  A copy of the '170 Patent is attached hereto as Exhibit 1.

28.     The '871 Patent claims patent-eligible subject matter under 35 U.S.C. § 101.

29.     Malikie is the assignee of and owns all rights, title, and interest to the'170 Patent. KPI is the beneficiary of a trust of which Malikie is the trustee and holds, owns, and asserts the '170 Patent for the benefit of KPI.

30.     Plaintiffs have standing to sue for infringement of the '170 Patent.

### The '077 Patent

31.     The '077 Patent, entitled "System and method for displaying address information on a map," duly and legally issued on August 16, 2016, from U.S. Patent Application No. 14/746,220, filed on June 22, 2015, naming Ronald Dicke as the inventor.  A copy of the '077 Patent is attached hereto as Exhibit 2.

32.     The '077 Patent claims priority to U.S. Patent Application No. 14/220,217, which was filed on March 20, 2014 and issued as U.S. Patent No. 9,074,900.  The '077 patent also claims

priority to U.S. Patent Application No. 13/912,257, which was filed on June 7, 2013 and issued as U.S. Patent No. 8,682,579.  The '077 Patent also claims priority to U.S. Patent Application No. 11/936,455, which was filed on November 7, 2007 and issued as U.S. Patent No. 8,463,424.

33.    The '077 Patent claims patent-eligible subject matter under 35 U.S.C. § 101.

34.    Malikie is the assignee of and owns all rights, title, and interest to the'077 Patent. KPI is the beneficiary of a trust of which Malikie is the trustee and holds, owns, and asserts the '077 Patent for the benefit of KPI.

35.    Plaintiffs have standing to sue for infringement of the '077 Patent.

**The '870 Patent**

36.    The '870 Patent, entitled "System and Method for Handling Peripheral Connections to Mobile Devices," duly and legally issued on November 19, 2019, from U.S. Patent Application No. 15/336,437, filed on October 27, 2016, naming Michael Brown, Michael Kirkup, Neil Adams, Herbert Little, and Christopher Pattenden as the inventors.  A copy of the '870 Patent is attached hereto as Exhibit 3.

37.    The '870 Patent claims priority to U.S. Patent Application No. 13/895,073, which was filed on May 15, 2013 and issued as U.S. Patent No. 9,507,950.  The '870 Patent also claims priority to U.S. Patent Application No. 12/576,737, which was filed on October 9, 2009 and issued as U.S. Patent No. 8,447,696. The '870 Patent claims priority to U.S. Patent Application No. 11/067,239, which was filed on February 25, 2005 and issued as U.S. Patent No. 7,664,707.  The '870 Patent also claims priority to U.S. Provisional Application No. 60/566,774, filed on April 30, 2004.

38.    The '870 Patent claims patent-eligible subject matter under 35 U.S.C. § 101.

ORIGINAL COMPLAINT

39.    Malikie is the assignee of and owns all rights, title, and interest to the '870 Patent. KPI is the beneficiary of a trust of which Malikie is the trustee and holds, owns, and asserts the '870 Patent for the benefit of KPI.

40.    Plaintiffs have standing to sue for infringement of the '870 Patent.

**The '212 Patent**

41.    The '212 Patent, entitled "Structured Low-Density Parity-Check (LDPC) Code," duly and legally issued on September 15, 2020, from U.S. Patent Application No. 15/838,188, filed on December 11, 2017, naming Michael Livshitz, Aleksandar Purkovic, Nina Burns, Sergey Sukhobok, and Muhammad Chaudhry as the inventors.  A copy of the '212 Patent is attached hereto as Exhibit 4.

42.    The '212 Patent is a reissue of U.S. Patent No. 8,301,975, which issued on October 30, 2012 from U.S. Patent Application No. 13/156,942, filed on June 9, 2011.  The '212 Patent claims priority to U.S. Patent Application No. 14/527,483, which was filed on October 29, 2014 and issued as U.S. Patent No. RE46,692, which was a reissue of U.S. Patent No. 8,301,975.  The '212 Patent also claims priority to U.S. Patent Application No. 11/665,171, which was filed on October 12, 2005 and on July 29, 2008 as PCT Application No. PCT/CA2005/001563 and which issued as U.S. Patent No. 7,996,746.  The '212 Patent also claims priority to U.S. Provisional Application Nos. 60/763,323, filed on April 20, 2005; 60/656,587, filed on February 25, 2005; 60/647,259, filed on January 26, 2005; 60/639,420, filed on December 27, 2004; 60/638,832, filed on December 22, 2004; 60/635,525, filed on December 13, 2004; 60/627,348, filed on November 12, 2004; and 60/617,902, filed on October 12, 2004.

43.    The '212 Patent claims patent-eligible subject matter under 35 U.S.C. § 101.

ORIGINAL COMPLAINT                                                      Page 10 of 30

44.     Malikie is the assignee of and owns all rights, title, and interest to the '212 Patent. KPI is the beneficiary of a trust of which Malikie is the trustee and holds, owns, and asserts the '212 Patent for the benefit of KPI.

45.     Plaintiffs have standing to sue for infringement of the '212 Patent.

**The '829 Patent**

46.     The '829 Patent, entitled "Low Density Parity Check (LDPC) Code," duly and legally issued on March 29, 2011, from U.S. Patent Application No. 12/796,453, filed on June 8, 2010, naming Michael Livshitz as the inventor.  A copy of the '829 Patent is attached hereto as Exhibit 5.

47.     The '829 Patent claims priority to U.S. Patent Application No. 11/393,622, which was filed on March 30, 2006 and issued as U.S. Patent No. 7,752,521.  The '829 Patent also claims priority to PCT Application No. PCT/CA2005/001563, filed on October 12, 2005.  The '233 Patent also claims priority to U.S. Provisional Application Nos. 60/635,525, filed on December 13, 2004; 60/617,902, filed on October 12, 2004; 60/627,348, filed on November 12, 2004; 60/638,832, filed on December 22, 2004; 60/639,420, filed on December 27, 2004; 60/647,259, filed on January 26, 2005; 60/656,587, filed on February 25, 2005; 60/673,323, filed on April 20, 2005; and 60/727,932, filed on October 18, 2005.

48.     The '829 Patent claims patent-eligible subject matter under 35 U.S.C. §101.

49.     Malikie is the assignee of and owns all rights, title, and interest to the '829 Patent. KPI is the beneficiary of a trust of which Malikie is the trustee and holds, owns, and asserts the '829 Patent for the benefit of KPI.

50.     Plaintiffs have standing to sue for infringement of the '829 Patent.

ORIGINAL COMPLAINT                                                          Page 11 of 30

**The '289 Patent**

51.     The '289 Patent, entitled "Low Density Parity Check (LDPC) Code," duly and legally issued on October 16, 2012, from U.S. Patent Application No. 13/346,155, filed on January 9, 2012, naming Michael Livshitz as the inventor.  A copy of the '289 Patent is attached hereto as Exhibit 6.

52.     The '289 Patent claims priority to U.S. Patent Application No. 12/987,729, which was filed on January 10, 2011 and issued as U.S. Patent No. 8,099,646.  The '289 Patent also claims priority to U.S. Patent Application No. 12/796,453, which was filed on June 8, 2010 and issued as the '829 Patent.  The '289 Patent also claims priority to U.S. Patent Application No. 11/393,622, which was filed on March 30, 2006 and issued as U.S. Patent No. 7,752,521.  The '289 Patent also claims priority to PCT Application No. PCT/CA2005/001563, filed on October 12, 2005.  The '289 Patent also claims priority to U.S. Provisional Application Nos. 60/617,902, filed on October 12, 2004; 60/627,348, filed on November 12, 2004; 60/635,525, filed on December 13, 2004; 60/638,832, filed on December 22, 2004; 60/639,420, filed on December 27, 2004; 60/647,59, filed on January 26, 2005; 60/656,587, filed on February 25, 2005; 60/673,323, filed on April 20, 2005; and 60/727,932, filed on October 18, 2005.

53.     The '289 Patent claims patent-eligible subject matter under 35 U.S.C. § 101.

54.     Malikie is the assignee of and owns all rights, title, and interest to the '289 Patent.  KPI is the beneficiary of a trust of which Malikie is the trustee and holds, owns, and asserts the '289 Patent for the benefit of KPI.

55.     Plaintiffs have standing to sue for infringement of the '289 Patent.

ORIGINAL COMPLAINT                                                      Page 12 of 30

## GENERAL ALLEGATIONS

56.     Defendants did not have Plaintiffs' permission to make, use, sell, offer to sell, or import products or practice methods that are covered by one or more claims of any of the Patents-in-Suit.

57.     Defendants have made, used, sold, offered to sell, and/or imported into the United States products that infringe (directly and/or indirectly) one or more claims in each of the Patents-in-Suit.

58.     Defendants have infringed (literally and/or under the doctrine of equivalents), directly, indirectly, and/or through subsidiaries, agents, representatives, or intermediaries, one or more claims of each of the Patents-in-Suit by making, using, importing, testing, demonstrating, marketing, promoting, repairing, offering and conducting test drives of, selling, and/or offering for sale in the United States the Accused Instrumentalities.

59.     Defendants' customers have directly infringed the Patents-in-Suit by using the Accused Instrumentalities.

60.     Hyundai Motor is in the business of selling the Accused Instrumentalities and encouraging and helping its dealers and customers to use the Accused Instrumentalities, including in an infringing manner. Through at least its product manuals, websites, and/or sales and marketing activities, Hyundai Motor has and continues to (where applicable) solicit, instruct, encourage, and aid and abet its customers to purchase and use the Accused Instrumentalities in an infringing way. *See, e.g.,* https://www.hyundai.com/worldwide/en; https://www.hyundai.com/worldwide/en/vehicles; https://www.hyundai.com/worldwide/en/cars/elantra-2023/convenience; https://ownersmanual.hyundai.com/main?langCode=en_US&countryCode=B28.

61.     Hyundai Capital is in the business of selling, including assisting with financing the sales of, the Accused Instrumentalities and encouraging and helping its dealers and customers to purchase and subsequently use the Accused Instrumentalities, including in an infringing manner Through its website, sales and marketing activities, and/or financing practices, including its terms, contracts, and agreements, Hyundai Capital has and continues to (where applicable) solicit, instruct, encourage, and aid and abet its dealers and customers to purchase and use the Accused Instrumentalities in an infringing way. *See, e.g.,* https://www.hyundaicapitalamerica.com/; https://www.hyundaicapitalamerica.com/OurCompany/FinanceSolutions.html; https://www.hmfusa.com/home; https://www.hmfusa.com/offers/special-programs.

62.     Patterson Motors is in the business of using and selling the Accused Instrumentalities and encouraging and helping its customers to use the Accused Instrumentalities, including in an infringing manner. Through its website, sales and marketing activities, demonstrations, test drives, support, service, financing, and repair activities, Patterson Motors has and continues to (where applicable) solicit, instruct, encourage, and aid and abet its customers to purchase and use the Accused Instrumentalities in an infringing way. *See, e.g.,* https://www.pattersonhyundaityler.com/; https://www.pattersonhyundaityler.com/new-inventory/index.htm; https://www.pattersonhyundaityler.com/dealership/about.htm; https://www.pattersonhyundaityler.com/assurance/blue-link.htm; https://www.pattersonhyundaityler.com/hyundai-service.htm.

63.     Hyundai Motor and Hyundai Capital have had, or should have had, knowledge of the Patents-in-Suit at least through Plaintiffs' sending of (and Hyundai Motor's receipt of) notice letters dated January 8, 2024, May 3, 2024, February 11, 2025, and March 27, 2026, and a June 6, 2025 presentation, which identified the Patents-in-Suit, additional patents, and the Accused

Instrumentalities as infringing the Patents-in-Suit. In addition, or in the alternative, Hyundai Motor, Hyundai Capital, and Patterson Motors have had knowledge of the Patents-in-Suit through the service of this Complaint.

64. By receiving such notice of infringement, Defendants obtained a subjective belief that there is a high probability that the Accused Instrumentalities infringe the Patents-in-Suit. Despite being put on notice of infringement, on information and belief Defendants have not taken any actions to avoid the conduct alleged to infringe and have not sought to remedy its infringements by offering to take a license. Defendants' failure to act reflects deliberate actions to avoid learning that the Accused Instrumentalities infringe the Patents-in-Suit and, more generally, a policy of not earnestly reviewing and respecting the intellectual property of others.

65. Defendants' actions after learning of the Patents-in-Suit were with specific intent to cause infringement of one or more claims of each of the Patents-in-Suit.

66. Further discovery may reveal earlier knowledge of one or more of the Patents-in-Suit, which would provide additional evidence of Defendants' specific intent, willful blindness, and/or willful infringement of the Patents-in-Suit.

67. Despite having knowledge of the Patents-in-Suit, as well as knowledge that it was directly and/or indirectly infringing one or more claims of each Patent-in-Suit, Defendants nevertheless proceeded to infringe the Patents-in-Suit, and induce others to do the same, with full and complete knowledge of the applicability of the Patents-in-Suit to the Accused Instrumentalities, without a license and without a good faith belief that the claims of the Patents-in-Suit were not infringed. As noted above, this includes, but is not limited to, the willful blindness of Defendants including their refusal to investigate whether the Accused Instrumentalities infringe the Patents-in-Suit.

ORIGINAL COMPLAINT

68.     Plaintiffs have been damaged as a result of Defendants' infringing conduct. Defendants are therefore liable to Plaintiffs in an amount that adequately compensates Plaintiffs for Defendants' infringement, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

69.     In addition, for the reasons discussed herein, Defendants' infringing activities detailed in this Complaint have been willful, egregious, wanton, and deliberate in disregard to Plaintiffs' rights, justifying a finding of willful infringement, enhanced damages under 35 U.S.C. § 284 and attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

70.     Defendants failed to obtain permission from Plaintiffs to make, use, sell, offer to sell, or import products incorporating the inventions claimed in the Patents-in-Suit including, but not limited to, the Accused Instrumentalities.

71.     Malikie sent Hyundai Motor a letter (addressed to Hyundai Motor's Chief of Intellectual Property, Mr. SeungHyun Youn), dated January 8, 2024, offering a license to Malikie's patent portfolio. Malikie's letter included the '077 Patent and '870 Patent and identified exemplary products or services that Malikie believes infringe those patents. Malikie received no response from Hyundai Motor in response to this letter.

72.     Malikie sent Hyundai Motor a further letter (again addressed to Mr. SeungHyun Youn) dated May 3, 2024, again offering a license to Malikie's patent portfolio. Malikie's letter included the '829 Patent, the '289 Patent, and the '212 Patent and identified exemplary products or services that Malikie believes infringe those patents. Malikie's letter included a copy of its prior January 8, 2024 letter. Malikie received no response from Hyundai Motor in response to this letter.

73.     Malikie sent Hyundai Motor a further letter (again addressed to Mr. SeungHyun Youn) dated August 9, 2024, again offering a license to Malikie's patent portfolio. In this letter,

Malikie identified a rate at which Hyundai Motor could license its standards-essential patents (SEPs). Malikie received no response from Hyundai Motor in response to this letter.

74.    Malikie sent Hyundai Motor America ("HMA") a letter (addressed to HMA's Senior Vice President and Chief Legal Officer, Mr. Jason Erb) dated October 18, 2024, again offering a license to Malikie's patent portfolio. Malikie's letter included copies of its January 8, May 3, and August 9, 2024 letters to Hyundai Motor. Malikie received no response from HMA in response to this letter.

75.    Malikie sent HMA a further letter (again addressed to Mr. Jason Erb) dated November 8, 2024, again offering a license to Malikie's patent portfolio. Malikie received no response from HMA in response to this letter.

76.    Malikie sent HMA a further letter (again addressed to Mr. Jason Erb) dated January 10, 2025, indicating that Malikie had not received any response from HMA or Hyundai Motor. Malikie did not receive any response from HMA in response to this letter.

77.    Malikie sent HMA a further letter (again addressed to Mr. Jason Erb) dated February 11, 2025, again offering a license to Malikie's patent portfolio. Malikie did not receive any response from HMA in response to this letter.

78.    Malikie sent HMA a further letter (again addressed to Mr. Jason Erb) dated May 9, 2025, again offering a license to Malikie's patent portfolio. With this letter, Malikie included a presentation detailing its SEP patents and detailing exemplary licensing terms. Malikie did not receive any response from HMA in response to this letter.

79.    Malikie sent HMA a further letter (again addressed to Mr. Jason Erb) dated June 6, 2025, again offering a license to Malikie's patent portfolio. With this letter, Malikie included a presentation detailing its non-SEP patents (including the '170 Patent, '870 Patent, and '077 Patent)

and detailing exemplary licensing rates and terms for those patents. Malikie also included a separate presentation detailing its SEP patents and detailing exemplary licensing terms. Malikie did not receive any response from HMA in response to this letter.

80.    Malikie sent HMA a further letter (again addressed to Mr. Jason Erb) dated March 27, 2026, again offering a license to Malikie's patent portfolio. Malikie's letter included the '170 Patent and identified exemplary products or services that Malikie believes infringe that patent. Malikie did not receive any response from HMA in response to this letter.

## IEEE 802.11 STANDARDS AND PLAINTIFFS' FRAND OBLIGATIONS

81.    The Institute of Electrical and Electronics Engineers ("IEEE") is a professional association that, among other activities, develops and publishes technical standards across a wide range of fields, including telecommunications and wireless communications.

82.    The IEEE-Standards Association ("IEEE-SA") is the standards development organization within the IEEE responsible for developing and maintaining consensus-based standards in various industries, including the IEEE 802.11 family of wireless networking standards (commonly known as "Wi-Fi"). The IEEE 802.11 standards define specifications for the medium access control ("MAC") and physical ("PHY") layers to enable interoperable wireless local area network implementations. The IEEE-SA requires participants in its standards development process to comply with its patent policy, which governs the disclosure and licensing of patent rights that may be essential to the implementation of an IEEE standard. Participants are required to disclose the existence of patents or pending patent applications that they believe may contain claims essential or potentially essential to a proposed or approved standard. When such disclosure is made, the patent holder is requested to submit a Letter of Assurance ("LOA") stating whether it is willing to grant licenses to implementers of the relevant standard under terms that are fair, reasonable, and non-discriminatory ("FRAND"), consistent with the IEEE-SA patent policy.

83.      BlackBerry participated actively in the IEEE standards development process, including the development of numerous standards within the 802.11 family. On multiple occasions, BlackBerry submitted public LOAs to the IEEE-SA stating that it may own patents containing Essential Patent Claims with respect to certain IEEE 802.11 standards, including the IEEE 802.11-2012, 802.11k, 802.11mb, 802.11n, 802.11p, 802.11r, 802.11s, 802.11u, 802.11v, 802.11w, 802.11y, 802.11z, 802.11aa, 802.11ad, and 802.11ae standards. In those LOAs, BlackBerry further indicated that it was willing to grant licenses under any patents containing Essential Patent Claims on terms that are FRAND.

84.      The IEEE Patent Policy makes clear that FRAND negotiations require a reciprocal duty of the SEP holder (Submitter) and licensee (Applicant) to engage in good faith negotiations without unreasonable delay, or alternatively, litigate. Section 6.2 of the current IEEE SA Standards Board Bylaws states:

> The Submitter and the Applicant should engage in good faith negotiations (if sought by either party) without unreasonable delay or may litigate … over patent validity, enforceability, essentiality, or infringement; Reasonable Rates or other licensing terms and conditions; compensation for unpaid past royalties or a future royalty rate….

85.      As mentioned above, Malikie offered Hyundai Motor the chance to license its SEPs, including those covering IEEE 802.11 standards, on Fair, Reasonable, and Non-Discriminatory ("FRAND") terms. Malikie has notified Hyundai Motor of infringement of its SEPs since at least 2024. Particularly, Malikie notified Hyundai Motor of its infringement of the '829 Patent, the '289 Patent, and the '212 Patent on May 3, 2024. On or about August 9, 2024, Malikie offered a specific FRAND royalty rate for all patents essential to the IEEE 802.11 standards. As detailed above, Malikie has shared evidence of Hyundai Motor's infringement of Malikie's SEPs and made repeated efforts to engage in licensing discussions with Hyundai Motor

ORIGINAL COMPLAINT                                                      Page 19 of 30

from January 8, 2024 to March 27, 2026. More than eighteen months have passed since Malikie's first FRAND offer. Yet Hyundai Motor has not accepted Malikie's proposed rate or even counteroffered with a rate that it believes is FRAND.

86.    Despite Malikie's numerous attempts to discuss licensing terms with Hyundai Motor and HMA, neither Hyundai Motor nor HMA has consented to a license. And despite having been offered a FRAND rate at which to license Malikie's SEPs, Hyundai Motor and HMA have effectively refused Malikie's rate and has never provided an alternate rate that it believes is FRAND. Malikie has therefore been left with no choice but to bring this action to enforce its rights as the owner of valid and valuable patents that Hyundai Motor (and Hyundai Capital and Patterson Motors) is willfully infringing. In addition, Malikie commits to grant licenses on FRAND terms under any patents acquired from BlackBerry that contain Essential Patent Claims relating to any IEEE 802.11 standards, including those with respect to which BlackBerry did not submit an LOA.

87.    For each count of infringement listed below, Plaintiffs incorporate and re-state the allegations contained in the preceding paragraphs above, including these General Allegations, as if fully set forth in each count of infringement.

## COUNT I – INFRINGEMENT OF THE '170 PATENT

88.    Plaintiffs incorporate herein the allegations made in paragraphs 1 through 87.

89.    Defendants have directly and/or indirectly infringed, and continue to infringe directly and/or indirectly, one or more claims of the '170 Patent, including, for example, claim 1, in violation of 35 U.S.C. § 271(a) and/or (b) by making, using, selling, offering for sale, and/or importing into the United States the Accused Instrumentalities.

ORIGINAL COMPLAINT

90.    An exemplary claim chart demonstrating Defendants' infringement of the '170 Patent, as well as Defendants' customers' infringement of the '170 Patent, which has been induced by Defendants, is attached as Exhibit 7 and incorporated herein by reference.

91.    Additionally, Defendants have indirectly infringed, and continue to indirectly infringe, the '170 Patent in violation of 35 U.S.C. § 271(b) at least by inducing dealerships, such as Patterson Motors, and customers to purchase, demonstrate, test, and/or use the Accused Instrumentalities in a way that directly infringes at least claim 1 of the '170 Patent.

92.    On information and belief, despite Defendants' knowledge of the '170 Patent and of their infringement of the '170 Patent, Defendants have not sought to remedy their infringement or sought to identify any good faith belief as to why they do not infringe the '170 Patent.

93.    On information and belief, Defendants' actions represented a specific intent to induce infringement of at least claim 1 of the '170 Patent.  For example, Defendants offered their dealers and/or customers extensive customer support, instructions, marketing and sales materials, test drives, service, financing, and support that instructed and encouraged their customers to obtain and use the Accused Instrumentalities in an infringing manner, including inducing actions that constitute direct infringement of claim 1 of the '170 Patent.

94.    As a result of Defendants' infringement of the '170 Patent, Plaintiffs have suffered and are owed monetary damages adequate to compensate them for the infringement under 35 U.S.C. § 284, but in no event less than a reasonable royalty.

95.    In addition, Defendants' infringing activities detailed in this Complaint have been willful, egregious, wanton, and deliberate in disregard to Plaintiffs' rights, justifying a finding of willful infringement, enhanced damages under 35 U.S.C. § 284 and attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## COUNT II – INFRINGEMENT OF THE '077 PATENT

96.    Plaintiffs incorporate herein the allegations made in paragraphs 1 through 95.

97.    Defendants have directly and/or indirectly infringed, and continue to directly and/or indirectly infringe, one or more claims of the '077 Patent, including, for example, claim 1, in violation of 35 U.S.C. § 271(a) and/or (b) by making, using, selling, offering for sale, and/or importing into the United States the Accused Instrumentalities.

98.    An exemplary claim chart demonstrating Defendants' infringement of the '077 Patent, as well as Defendants' customers' infringement of the '077 Patent, which has been induced by Defendants, is attached as Exhibit 8 and incorporated herein by reference.

99.    Additionally, Defendants have indirectly infringed, and continue to indirectly infringe, the '077 Patent in violation of 35 U.S.C. § 271(b) at least by inducing dealerships, such as Patterson Motors, and customers to purchase, demonstrate, test, and/or use the Accused Instrumentalities in a way that directly infringes at least claim 1 of the '077 Patent.

100.   On information and belief, despite Defendants' knowledge of the '077 Patent and of their infringement of the '077 Patent, Defendants have not sought to remedy their infringement or sought to identify any good faith belief as to why they do not infringe the '077 Patent.

101.   On information and belief, Defendants' actions represented a specific intent to induce infringement of at least claim 1 of the '077 Patent.  For example, Defendants offered their dealers and/or customers extensive customer support, instructions, marketing and sales materials, test drives, service, financing, and support that instructed and encouraged their customers to obtain and use the Accused Instrumentalities in an infringing manner, including inducing actions that constitute direct infringement of claim 1 of the '077 Patent.

ORIGINAL COMPLAINT                                                      Page 22 of 30

102.    As a result of Defendants' infringement of the '077 Patent, Plaintiffs have suffered and are owed monetary damages adequate to compensate them for the infringement under 35 U.S.C. § 284, but in no event less than a reasonable royalty.

103.    In addition, Defendants' infringing activities detailed in this Complaint have been willful, egregious, wanton, and deliberate in disregard to Plaintiffs' rights, justifying a finding of willful infringement, enhanced damages under 35 U.S.C. § 284 and attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

### COUNT III – INFRINGEMENT OF THE '870 PATENT

104.    Plaintiffs incorporate herein the allegations made in paragraphs 1 through 103.

105.    Defendants have directly and/or indirectly infringed, and continue to directly and/or indirectly infringe, one or more claims of the '870 Patent, including, for example, claim 1, in violation of 35 U.S.C. § 271(a) and/or (b) by making, using, selling, offering for sale, and/or importing into the United States the Accused Instrumentalities.

106.    Exemplary claim charts demonstrating Defendants' infringement of the '870 Patent, as well as Defendants' customers' infringement of the '870 Patent, which has been induced by Defendants, are attached as Exhibits 9-10 and incorporated herein by reference.

107.    Additionally, Defendants have indirectly infringed, and continue to indirectly infringe, the '870 Patent in violation of 35 U.S.C. § 271(b) at least by inducing dealerships, such as Patterson Motors, and customers to purchase, demonstrate, test, and/or use the Accused Instrumentalities in a way that directly infringes at least claim 1 of the '870 Patent.

108.    On information and belief, despite Defendants' knowledge of the '870 Patent and of their infringement of the '870 Patent, Defendants have not sought to remedy their infringement or sought to identify any good faith belief as to why they do not infringe the '870 Patent.

109.    On information and belief, Defendants' actions represented a specific intent to induce infringement of at least claim 1 of the '870 Patent.  For example, Defendants offered their dealers and/or customers extensive customer support, instructions, marketing and sales materials, test drives, service, financing, and support that instructed and encouraged their customers to obtain and use the Accused Instrumentalities in an infringing manner, including inducing actions that constitute direct infringement of claim 1 of the '870 Patent.

110.    As a result of Defendants' infringement of the '870 Patent, Plaintiffs have suffered and are owed monetary damages adequate to compensate them for the infringement under 35 U.S.C. § 284, but in no event less than a reasonable royalty.

111.    In addition, Defendants' infringing activities detailed in this Complaint have been willful, egregious, wanton, and deliberate in disregard to Plaintiffs' rights, justifying a finding of willful infringement, enhanced damages under 35 U.S.C. § 284 and attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## COUNT IV – INFRINGEMENT OF THE '212 PATENT

112.    Plaintiffs incorporate herein the allegations made in paragraphs 1 through 111.

113.    Defendants have directly and/or indirectly infringed, and continue to directly and/or indirectly infringe, one or more claims of the '212 Patent, including, for example, claim 13, in violation of 35 U.S.C. § 271(a) and/or (b) by making, using, selling, offering for sale, and/or importing into the United States the Accused Instrumentalities.

114.    An exemplary claim chart demonstrating Defendants' infringement of the '212 Patent, as well as Defendants' customers' infringement of the '212 Patent, which has been induced by Defendants, is attached as Exhibit 11 and incorporated herein by reference.

115.    Additionally, Defendants have indirectly infringed, and continue to indirectly infringe, the '212 Patent in violation of 35 U.S.C. § 271(b) at least by inducing dealerships, such as Patterson Motors, and customers to purchase, demonstrate, test, and/or use the Accused Instrumentalities in a way that directly infringes at least claim 13 of the '212 Patent.

116.    On information and belief, despite Defendants' knowledge of the '212 Patent and of their infringement of the '212 Patent, Defendants have not sought to remedy their infringement or sought to identify any good faith belief as to why they do not infringe the '212 Patent.

117.    On information and belief, Defendants' actions represented a specific intent to induce infringement of at least claim 13 of the '212 Patent.  For example, Defendants offered their dealers and/or customers extensive customer support, instructions, marketing and sales materials, test drives, service, financing, and support that instructed and encouraged their customers to obtain and use the Accused Instrumentalities in an infringing manner, including inducing actions that constitute direct infringement of claim 13 of the '212 Patent.

118.    As a result of Defendants' infringement of the '212 Patent, Plaintiffs have suffered and are owed monetary damages adequate to compensate them for the infringement under 35 U.S.C. § 284, but in no event less than a reasonable royalty.

119.    In addition, Defendants' infringing activities detailed in this Complaint have been willful, egregious, wanton, and deliberate in disregard to Plaintiffs' rights, justifying a finding of willful infringement, enhanced damages under 35 U.S.C. § 284 and attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## COUNT V – INFRINGEMENT OF THE '829 PATENT

120.    Plaintiffs incorporate herein the allegations made in paragraphs 1 through 119.

121.    Defendants have directly and/or indirectly infringed, and continue to directly and/or indirectly infringe, one or more claims of the '829 Patent, including, for example, claim 1, in violation of 35 U.S.C. § 271(a) and/or (b) by making, using, selling, offering for sale, and/or importing into the United States the Accused Instrumentalities.

122.    An exemplary claim chart demonstrating Defendants' infringement of the '829 Patent, as well as Defendants' customers' infringement of the '829 Patent, which has been induced by Defendants, is attached as Exhibit 12 and incorporated herein by reference.

123.    Additionally, Defendants have indirectly infringed, and continue to indirectly infringe, the '829 Patent in violation of 35 U.S.C. § 271(b) at least by inducing dealerships, such as Patterson Motors, and customers to purchase, demonstrate, test, and/or use the Accused Instrumentalities in a way that directly infringes at least claim 1 of the '829 Patent.

124.    On information and belief, despite Defendants' knowledge of the '829 Patent and of their infringement of the '829 Patent, Defendants have not sought to remedy their infringement or sought to identify any good faith belief as to why they do not infringe the '829 Patent.

125.    On information and belief, Defendants' actions represented a specific intent to induce infringement of at least claim 1 of the '829 Patent.  For example, Defendants offered their dealers and/or customers extensive customer support, instructions, marketing and sales materials, test drives, service, financing, and support that instructed and encouraged their customers to obtain and use the Accused Instrumentalities in an infringing manner, including inducing actions that constitute direct infringement of claim 1 of the '829 Patent.

126.    As a result of Defendants' infringement of the '829 Patent, Plaintiffs have suffered and are owed monetary damages adequate to compensate them for the infringement under 35 U.S.C. § 284, but in no event less than a reasonable royalty.

ORIGINAL COMPLAINT                                                                        Page 26 of 30

127.    In addition, Defendants' infringing activities detailed in this Complaint have been willful, egregious, wanton, and deliberate in disregard to Plaintiffs' rights, justifying a finding of willful infringement, enhanced damages under 35 U.S.C. § 284 and attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## COUNT VI – INFRINGEMENT OF THE '289 PATENT

128.    Plaintiffs incorporate herein the allegations made in paragraphs 1 through 127.

129.    Defendants have directly and/or indirectly infringed, and continue to directly and/or indirectly infringe, one or more claims of the '289 Patent, including, for example, claim 6, in violation of 35 U.S.C. § 271(a) and/or (b) by making, using, selling, offering for sale, and/or importing into the United States the Accused Instrumentalities.

130.    An exemplary claim chart demonstrating Defendants' infringement of the '289 Patent, as well as Defendants' customers' infringement of the '289 Patent, which has been induced by Defendants, is attached as Exhibit 13 and incorporated herein by reference.

131.    Additionally, Defendants have indirectly infringed, and continue to indirectly infringe, the '289 Patent in violation of 35 U.S.C. § 271(b) at least by inducing dealerships, such as Patterson Motors, and customers to purchase, demonstrate, test, and/or use the Accused Instrumentalities in a way that directly infringes at least claim 6 of the '289 Patent.

132.    On information and belief, despite Defendants' knowledge of the '289 Patent and of their infringement of the '289 Patent, Defendants have not sought to remedy their infringement or sought to identify any good faith belief as to why they do not infringe the '289 Patent.

133.    On information and belief, Defendants' actions represented a specific intent to induce infringement of at least claim 6 of the '289 Patent.  For example, Defendants offered their dealers and/or customers extensive customer support, instructions, marketing and sales materials,

test drives, service, financing, and support that instructed and encouraged their customers to obtain and use the Accused Instrumentalities in an infringing manner, including inducing actions that constitute direct infringement of claim 6 of the '289 Patent.

134.    As a result of Defendants' infringement of the '289 Patent, Plaintiffs have suffered and are owed monetary damages adequate to compensate them for the infringement under 35 U.S.C. § 284, but in no event less than a reasonable royalty.

135.    In addition, Defendants' infringing activities detailed in this Complaint have been willful, egregious, wanton, and deliberate in disregard to Plaintiffs' rights, justifying a finding of willful infringement, enhanced damages under 35 U.S.C. § 284 and attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## DEMAND FOR A JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all issues triable of right by a jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in its favor and grant the following relief:

    a.  A judgment that Defendants have directly and/or indirectly infringed one or more claims of each of the Patents-in-Suit either literally or under the doctrine of equivalents;

    b.  A judgment requiring Defendants to pay Plaintiffs damages under 35 U.S.C. § 284 for their past, present, and future infringement, as applicable, of each of the Patents-in-Suit, including an accounting for any sales or damages not presented at trial;

    c.  A judgment and order that Defendants have willfully infringed the Patents-in-Suit

ORIGINAL COMPLAINT

and requiring Defendants to pay Plaintiffs enhanced damages under 35 U.S.C. § 284 and attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285;

d.  A judgment that Defendants account for and pay to Plaintiffs a reasonable, ongoing, post-judgment royalty for any continuing infringing activities not already accounted for;

e.  A permanent injunction enjoining Defendants and their officers, agents, representatives, assigns, licensees, distributors, employees, related entities, and all those acting in privity or in concert with Defendants from further infringement of the Patents-in-Suit;

f.  A judgment and order requiring Defendants to pay Plaintiffs prejudgment and post-judgment interest on the damages awarded;

g.  A judgment and order requiring Defendants to pay Plaintiffs' costs; and

h.  Such other and further relief as the Court may deem just and proper.

Dated: May 8, 2026

Respectfully submitted,

*/s/ Timothy E. Grochocinski*
Timothy E. Grochocinski
Illinois Bar No. 6295055
tim@nelbum.com
C. Austin Ginnings
Illinois Bar No. 6343678
austin@nelbum.com
Taryn N. Trusty
Illinois Bar No. 6344409
taryn@nelbum.com
NELSON BUMGARDNER CONROY PC
745 McClintock Drive, Suite 340
Burr Ridge, Illinois 60527
708.675.1974 (telephone)

Brent Bumgardner
Texas Bar No. 00795272
brent@nelbum.com
NELSON BUMGARDNDER CONROY PC
3131 West 7th Street, Suite 300
Fort Worth, Texas 76107
817.377.9111 (telephone)


*Attorneys for Plaintiffs*
*Malikie Innovations Ltd. and*
*Key Patent Innovations Ltd.*

ORIGINAL COMPLAINT